UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PATRICIA SIMON, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 15-cv-00929 (TSC) |
| INSUN HOFGARD, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

This case arises out of Plaintiffs Patricia Simon and Timothy Snowhite's purchase of a condominium and parking space (the "Property") from Defendants JBA Development, LLC ("JBA"), Insun Hofgard and Jefferson Hofgard (collectively, the "Hofgard Defendants"). Defendants Premium Title & Escrow LLC ("Premium") and its principal Benjamin Soto (together, the "Soto Defendants") provided settlement services to Plaintiffs in connection with their purchase of the Property, including issuing them a title insurance policy.

After purchasing the Property, Plaintiffs sued Defendants in the Superior Court of the District of Columbia. Plaintiffs' Superior Court complaint, which remains the operative pleading in this case, alleges three counts: (i) "Fraud and Misrepresentation, Breach of Contract"; (ii) violation of the District of Columbia Consumer Protection Procedures Act, 28 D.C. Code §§ 3901-3913 (the "CPPA"); and (iii) rescission. Shortly after the complaint was filed, the Hofgard Defendants removed the case to this court, claiming complete diversity between themselves and Plaintiffs, and alleging the fraudulent joinder of the non-diverse Soto Defendants.

Before the court is Plaintiffs' motion requesting: (i) that pending motions be held in abeyance;[1] (ii) remand of this case to the Superior Court; and (iii) costs and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 1447(c) (the "Motion"). Plaintiffs argue that remand is appropriate because, contrary to the Hofgard Defendants' position in their Notice of Removal, the Soto Defendants were not fraudulently joined. In order to decide the Motion, then, the court must determine whether the Soto Defendants were, in fact, fraudulently joined. This requires the court to determine whether it would be possible for Plaintiffs to establish a cause of action or right to relief against the Soto Defendants on their CPPA claim, which is the only claim that Plaintiffs appear to bring against the Soto Defendants. (*See* Compl. ¶¶ 26-34).

Upon consideration of the parties' pleadings and the briefs filed in support of and in opposition to Plaintiffs' Motion, and for the reasons set forth below, the court finds that: (i) Defendants have not carried their burden of demonstrating that Plaintiffs cannot possibly establish a cause of action or right to relief against the Soto Defendants on their CPPA claim, and therefore have not established fraudulent joinder; and (ii) Plaintiffs have not demonstrated an entitlement to attorneys' fees or any other costs or expenses. Accordingly, Plaintiffs' Motion is hereby **GRANTED IN PART and DENIED IN PART**, and this case is remanded to the Superior Court of the District of Columbia.

**I.    BACKGROUND**

Plaintiffs are citizens of the District of Columbia. (*See* Compl. ¶ 2). In November 2013, they purchased the Property from the Hofgard Defendants, who are citizens of the Commonwealth of Virginia. (*See id.*; Notice of Removal ¶ 7). The Soto Defendants provided

---

[1] When the Motion was filed, the Hofgard Defendants' motion to dismiss was pending. The court subsequently denied the motion to dismiss without prejudice pending the resolution of Plaintiffs' Motion, mooting Plaintiffs' request to hold other pending motions in abeyance.

settlement services in connection with Plaintiffs' purchase of the Property, which included issuing a title insurance policy in their capacity as agent for a non-party title insurance company. (*See* Compl. ¶ 15). Benjamin Soto is alleged to be "a District of Columbia attorney" and the "principal/owner" of Premium, which the court will construe to mean that each of the Soto Defendants is a resident and citizen of the District of Columbia. (*See id.* ¶ 4). Thus, because both Plaintiffs and the Soto Defendants are alleged to be residents and citizens of the District of Columbia, the complaint does not allege diversity of citizenship on its face.

Plaintiffs claim that they discovered various problems with the Property after purchasing it, including that it was:

> a) not constructed in accordance with the approved plans; b) constructed using non-code compliant materials and fixtures by unlicensed and incompetent trades people; [and] c) not subject to occupancy due to Defendants' failure to obtain a final inspection and occupancy permit as well as being contrary to the applicable zoning ordinances, codes and regulations.

(*Id.* ¶ 16). Plaintiffs allege that, as a result of these issues, they cannot lawfully occupy the Property and are subject to a D.C. government order to vacate it. (*See id.* ¶¶ 22-23). Plaintiffs also allege that they continue to incur expenses to obtain zoning permits and make the repairs necessary to allow them to lawfully occupy the Property. (*See id.* ¶ 37).

According to Plaintiffs, the Hofgard Defendants induced them to use the Soto Defendants as the settlement agent for their purchase of the Property without advising them that the two sets of Defendants had "an ongoing business relationship" with one another, and Plaintiffs contend that this "unethical conflict of interest" should have been disclosed to them. (*Id.* ¶¶ 13-14, 29-32). Plaintiffs also allege that the Soto Defendants:

- "offer real estate settlement services including but not limited to document preparation, filing and releasing real property deeds of trust, paying off any outstanding liens and investigating all conditions relevant to the property condition in order for [a buyer and his or her] lender to be able to purchase title

3

      insurance which guarantees that the title to the property is good and marketable," which are "goods and services as defined by the CPPA" (*id.* ¶ 28);

- were paid by Plaintiffs for "settlement/closing services which included but were not limited to the issuance of a policy of title insurance from Chicago Title Insurance Company, for whom Defendant Soto was an authorized agent," and that this title insurance policy "warranted and ensured that Plaintiffs would have good and marketable title" to the Property (*id.* ¶ 15); and

- "acting in concert with the [Hofgard] Defendants, failed to diligently investigate the situation surrounding the property conditions necessary to make a legally sufficient determination as to whether the then-existing condition of the [Property] upon sale were such that the title conveyed by [the Hofgard] Defendants to Plaintiffs was good and marketable" (*id.* ¶ 33).

Plaintiffs further allege that,

      had [the Soto Defendants] acted diligently, they would have learned that a) no final inspection was ever performed on the [P]roperty; b) no certificate of occupancy was ever issued to allow the Plaintiffs to occupy the [P]roperty; and c) a current survey would have revealed that the [P]roperty as sold was built beyond the scope of the plans and beyond the footprint of the [P]roperty so as to render the [P]roperty non-conforming with applicable codes, ordinances and regulations then existing in the District of Columbia.

(*Id.* ¶ 15).

      Each set of Defendants has attached to its opposition brief a declaration from Benjamin Soto (the "Soto Declaration"), as well as a copy of the Settlement Disclosure and Agreement between Plaintiffs, the Hofgard Defendants and the Soto Defendants ("the SDA"). The Soto Declaration states, among other things, that Premium "is not in the business of performing home inspections, was not engaged in this transaction to perform a home inspection, and would not have accepted such an engagement if asked." (Soto Decl. ¶ 6). It also states:

      In transactions where a single condominium unit is being purchased, a property survey of the boundaries of the entire lot containing the condominium building is customarily not ordered, as such a boundary survey would be duplicative of the survey obtained by the condominium developer and would needlessly increase costs. When a purchaser buys a condominium, the condominium developer is required to give the purchaser a copy of the condominium bylaws, which include a copy of the plats and plans recorded with the District, and a copy of the survey which the developer purchased when it acquired the land. The owners' title

>insurance policy for the condominium included a corresponding exception for matters which would be disclosed by a complete land survey, to avoid incurring the unnecessary expense of obtaining coverage that would be duplicative of the title policy obtained by the condominium developer.

(Soto Decl. ¶ 7).

The SDA sets forth how Premium Title may use funds to complete its settlement services, disclaims certain liabilities, and requires the parties to cooperate in the transaction to correct settlement errors, among other things.  (*See* SDA at 1-2).  The SDA provides that the Soto Defendants are

>released from any liability for matters not appearing of public record at the time title examination is made and for liability for notices of and/or actual violations of governmental orders or requirements, if any, issued by any departments, offices, or other authority of local, county, State or Federal government as to ownership, occupancy, zoning health department and/or laws, regulations and/or ordinances.

(*Id.* at 1).  The SDA also states that the Soto Defendants

>provide[] settlement services to participants in the transaction which are limited in nature and do[] not undertake to or agree to provide legal representation or advice as advocate or counselor, to any person or party to a real estate transaction or to furnish advice, answer or make conclusions as to legal obligations of the parties or to resolve disputes between parties to such transactions.

(*Id.* at 2).  The SDA does not describe the Soto Defendants' rights and duties in providing settlement services and title insurance.

Lastly, while the parties do not dispute that the Soto Defendants provided Plaintiffs with a title insurance policy, none of them have provided the court with a copy of this policy.

## II.     LEGAL STANDARD

### a.  Remand

The court has original subject matter jurisdiction over cases between citizens of different states in matters with the requisite amount in controversy.  *See* 28 U.S.C. § 1332(a).[2]  Where a

---

[2] The parties agree that the amount-in-controversy requirement is met here.

district court has jurisdiction solely on the basis of diversity of citizenship between the parties, there must be "complete diversity," meaning that no plaintiff may have the same citizenship as any defendant. *See Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 130 (D.D.C. 2013). Limited liability companies like JBA and Premium carry the citizenship of each of their members. *See Hoffman v. Fairfax Cty. Redevelopment & Hous. Auth.*, 276 F. Supp. 2d 14, 18 (D.D.C. 2003).

A defendant cannot remove a case to federal court on the basis of diversity jurisdiction where the plaintiff could not have originally filed suit there. *See* 28 U.S.C. § 1441(a). When such a removal takes place, a plaintiff may file a motion to remand for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). In opposing such a motion, the removing defendant bears the burden of proving that removal was proper, and a court must remand if the defendant cannot meet that burden. *See Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175, 180 (D.D.C. 2003). Importantly, "[c]ourts in this circuit have construed removal jurisdiction strictly, favoring remand where the propriety of removal is unclear." *Ballard v. District of Columbia*, 813 F. Supp. 2d 34, 38 (D.D.C. 2011); *see also Busby v. Capital One, N.A.*, 841 F. Supp. 2d 49, 53 (D.D.C. 2012) ("Courts must strictly construe removal statutes. The court must resolve any ambiguities concerning the propriety of removal in favor of remand.") (citations omitted).

    b. <u>Fraudulent Joinder</u>

The Supreme Court has long recognized that a plaintiff's fraudulent joinder of an in-state defendant should not defeat a diverse defendant's right to remove. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). "The fraudulent joinder doctrine allows [a court] to 'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'"

*Walter E. Campbell Co. v. Hartford Fin. Servs. Grp., Inc.*, 959 F. Supp. 2d 166, 170 (D.D.C. 2013) [hereinafter *Hartford I*] (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)).

The "defendant claiming fraudulent joinder bears a heavy burden, and courts are required to resolve disputed issues of fact and law in favor of the plaintiff." *NASA Fed. Credit Union v. W. Jenkins Plumbing & Heating Co.*, 607 F. Supp. 2d 213, 215 (D.D.C. 2009) (citation omitted). To carry its heavy burden, the removing defendant must show that there is no possibility that "the plaintiff can establish a cause of action" or "right to relief" against the non-diverse defendant. *Walter E. Campbell Co. v. Hartford Fin. Servs. Grp., Inc.*, 48 F. Supp. 3d 53, 56 (D.D.C. 2014) [hereinafter *Hartford II*]; *see also Boyd v. Kilpatrick*, 79 F. Supp. 3d 153, 157 (D.D.C. 2015) ("If the Court concludes, after construing all of the facts in a plaintiff's favor, that there is *even a possibility* that a state court would find a cause of action stated against [the in-state defendant] on the facts alleged by the plaintiff, diversity is incomplete and the case must be remanded.") (quotation omitted) (emphasis and alteration in original); *Hartford I*, 959 F. Supp. 2d at 170 ("Fraudulent joinder only arises if, construing all facts and uncertainties in the state substantive law in favor of the plaintiffs, the district court finds that there is 'no possibility of a valid cause of action being set forth against the in-state defendant.'") (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. 1981)).[3]

A plaintiff has a possibility of establishing a cause of action or right to relief against a defendant so long as the plaintiff's claim is not "wholly nonsensical." *Boyd*, 79 F. Supp. 3d at 157-58. In determining whether a defendant has been fraudulently joined, a court must assume all of the facts alleged by the plaintiff to be true and resolve all uncertainties as to state

---

[3] A removing defendant may also carry its burden of establishing fraudulent joinder by demonstrating that the plaintiff fraudulently pled jurisdictional facts. *See, e.g.*, *Hartford I*, 959 F. Supp. 2d at 170. However, neither set of Defendants makes such an argument here.

substantive law in the plaintiff's favor. *See Hartford II*, 48 F. Supp. 3d at 55. The court's limited role in determining whether a defendant has been fraudulently joined prohibits it from "delv[ing] into the legal and factual thicket of a merits analysis," and requires it to "instead confine its inquiry to whether, on the basis of the claims pled, the plaintiff has shown even a slight possibility of relief." *Boyd*, 79 F. Supp. 3d at 157 (quotation omitted).

The heavy burden for establishing fraudulent joinder promotes comity towards the jurisdiction of state courts by preventing federal courts from trespassing on their jurisdictional turf. *See, e.g.*, *Downey v. Ambassador Dev., LLC*, 568 F. Supp. 2d 28, 30 (D.D.C. 2008) ("Because of the significant federalism concerns involved, this Court strictly construes the scope of its removal jurisdiction. Accordingly, if federal jurisdiction is doubtful, a remand to state court is necessary.") (quotation and citations omitted). Thus, "a determination of fraudulent joinder should be made cautiously by a court uncertain of its jurisdiction." *Brown v. Brown & Williamson Tobacco Corp.*, 26 F. Supp. 2d 74, 78 (D.D.C. 1998) (quotation and alteration omitted); *see also id.* ("It behooves those of us in federal tribunals to be certain of our jurisdictional underpinnings before [endeavoring to decide matters of state law], . . . and we should constantly remind ourselves that we must not trespass upon the judicial 'turf' of the state courts.") (quoting *B., Inc.*, 663 F.2d at 554) (alterations in original).

  c. <u>The District of Columbia Consumer Protection and Procedures Act</u>

The CPPA regulates "trade practices arising out of consumer-merchant relationships." *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1129 (D.C. 2015). It defines a "consumer" as a person who purchases or otherwise receives consumer goods or services, or who "would otherwise provide the economic demand for a trade practice." 28 D.C. Code § 3901(a)(2)(A).

It defines a "merchant" as someone who, in the ordinary course of business, sells or supplies consumer goods or services. *See id.* § 3901(a)(3).

The CPPA makes it an unlawful trade practice, "whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to . . . fail to state a material fact if such failure tends to mislead." *See id.* § 3904(f). To state a claim under section 3904(f), "the plaintiff must plead: (1) the existence of a material fact that (2) the defendant . . . failed to state and (3) [that] such . . . omission had a tendency to mislead." *Hancock v. Urban Outfitters*, 32 F. Supp. 3d 26, 29-30 (D.D.C. 2014). Under the CPPA, a fact is material if:

> (a) a reasonable man or woman would attach importance to its existence or nonexistence in determining his or her choice of action in the transaction in question; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his or her choice of action, although a reasonable man or woman would not so regard it.

*Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013) (quotation, citation and alterations omitted).

Because it is a remedial statute, the CPPA must "be construed and applied liberally to promote its purpose." 28 D.C. Code § 3901(c).

### III.  ANALYSIS

For the reasons set forth below, the court finds that Defendants have not met their burden of establishing the fraudulent joinder of the non-diverse Soto Defendants because there is a possibility that Plaintiffs can establish a cause of action or right to relief against the Soto Defendants on their CPPA claim. The court will therefore grant Plaintiffs' Motion insofar as it seeks to have this case remanded to D.C. Superior Court. The court also finds, for the reasons set forth below, that the non-removability of this case was not so obvious as to warrant an award

9

of costs and expenses. The court will therefore exercise its discretion to deny Plaintiffs' request for attorneys' fees and other costs or expenses.

    a. <u>Fraudulent Joinder</u>

As an initial matter, the Superior Court could conclude that the Soto Defendants are "merchants" under section 3901(a)(3) because Plaintiffs allege that the Soto Defendants

> offer real estate settlement services including but not limited to document preparation, filing and releasing real property deeds of trust, paying off any outstanding liens and investigating all conditions relevant to the property condition in order for [a buyer and his or her] lender to be able to purchase title insurance which guarantees that the title to the property is good and marketable.

(Compl. ¶ 28). The Superior Court could also conclude that Plaintiffs are "consumers" under section 3901(a)(2) because they allege that they paid the Soto Defendants for "settlement/closing services, which included but were not limited to the issuance of a policy of title insurance" which "warranted and ensured that Plaintiffs would have good and marketable title" to the Property. (*Id.* ¶ 15).

Given the elements of a section 3904(f) violation as set forth above, the court finds that the Superior Court could conceivably conclude that the allegations of the complaint suffice to establish the existence of a CPPA violation.

First, Plaintiffs allege the existence of a number of facts that the Superior Court could conceivably find to be material – *e.g.*, that (i) "no final inspection was ever performed" on the Property; (ii) "no certificate of occupancy was ever issued to allow the Plaintiffs to occupy" the Property; and (iii) the Property "was built beyond the scope of the plans and beyond [its] footprint . . . so as to render [it] non-conforming with applicable codes, ordinances and regulations." (*Id.*). In short, Plaintiffs allege that the Property is not habitable because it lacks necessary permits and violates applicable zoning ordinances. Given that Plaintiffs were buying

the Property in order to reside there, the fact that the Property could not be lawfully occupied was certainly material to them.

Second, Plaintiffs allege that the Soto Defendants did not inform them of any of these potentially material facts "[a]t [any] time before or after [the] sale" of the Property. (*Id.* ¶ 16). Defendants argue that the complaint fails to allege that the Soto Defendants *actually knew* the facts that they allegedly failed to disclose. (Soto Defs.' Opp'n at 4). But Defendants must demonstrate "that there is no possibility of a valid cause of action being set forth" against them, *Hartford I*, 959 F. Supp. 2d at 170 (quotation omitted), and in the court's view, Plaintiffs' complaint could conceivably be read to allege that the Soto Defendants knew about the Property's deficiencies. For example, Plaintiffs allege that the Hofgard Defendants knew about and concealed these deficiencies (Compl. ¶¶ 20-22), that the two sets of Defendants had an "ongoing business relationship" with one another (*id.* ¶ 14), and that the Soto Defendants "act[ed] in concert with" the Hofgard Defendants in providing the complained-of settlement services (*id.* ¶ 33). Resolving the complaint's factual ambiguities in Plaintiffs' favor, as it must at this stage, the court concludes that there is at least "a possibility" the Superior Court could find that Plaintiffs have sufficiently pled scienter. *Boyd*, 79 F. Supp. 3d at 157 (quotation omitted) (emphasis removed).

Third, the Superior Court could find that the aforementioned material omissions had the tendency to mislead based on Plaintiffs' allegation that, "had they known prior to purchasing the [P]roperty . . . about all of the foregoing false and misleading representations . . . they never would have purchased the [P]roperty." (Compl. ¶ 25).

In addition to the scienter argument addressed above, Defendants make a number of other arguments as to why Plaintiffs cannot possibly establish a cause of action or right to relief

11

against the Soto Defendants. The court finds, however, that none of these arguments completely preclude the possibility that Plaintiffs could establish a cause of action or right to relief on their claim under the CPPA, which must "be construed and applied liberally to promote its purpose," 28 D.C. Code § 3901(c), and that Defendants have therefore failed to fulfill their "heavy" burden for establishing fraudulent joinder. *NASA Fed. Credit Union*, 607 F. Supp. 2d at 215.

Defendants' principal argument is essentially that the Soto Defendants' issuance of title insurance could not have had the tendency to mislead Plaintiffs regarding the Property's conformance with zoning regulations and the like because the provision of title insurance does not guarantee anything other than unencumbered ownership of a property. (*See* Soto Defs.' Opp'n at 8-9; Hofgard Defs.' Opp'n at 6). But a court must assess whether a representation or omission tends to mislead based on how that representation or omission would be understood by a reasonable consumer. *See, e.g.*, *Whiting v. AARP*, 637 F.3d 355, 363 (D.C. Cir. 2011) ("under District of Columbia law a claim 'of an unfair trade practice is properly considered in terms of how the practice would be viewed and understood by a reasonable consumer'") (quoting *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008)).

Here, the parties do not cite any precedent regarding whether a reasonable consumer would understand the provision of title insurance or settlement services related to the purchase of a property to mean that the property has obtained the necessary permits or conforms to applicable zoning regulations, and the court is not aware of any controlling precedent directly addressing this issue. Moreover, the court has not been provided with the title insurance policy that the Soto Defendants issued to Plaintiffs, so it cannot determine whether Plaintiffs could reasonably have read that policy to cover the aforementioned problems with the Property. Thus, because ambiguities in the facts and in state law must be construed in a plaintiff's favor as part of

the fraudulent joinder analysis – and because removal statutes must be construed strictly and the CPPA must be construed liberally – the court finds that the Superior Court could conceivably conclude that (i) Plaintiffs reasonably understood the Soto Defendants' provision of title insurance and settlement services to represent and warrant that the Property had obtained the necessary permits and conformed to applicable zoning ordinances; and (ii) the Soto Defendants' failure to disclose the Property's deficiencies, which prohibit anyone from actually occupying the Property, tended to mislead Plaintiffs.

Defendants also claim that Plaintiffs' title insurance policy "included a corresponding exception for matters which would be disclosed by a complete land survey." (Soto Decl. ¶ 7). Again, however, given that the court has not been provided with a copy of the title insurance policy at issue in this case, it cannot determine whether this purported exception would actually preclude the Soto Defendants' liability on Plaintiffs' CPPA claim.

Defendants also argue that the SDA released the Soto Defendants from liability for their failure to disclose the Property's lack of permits and nonconformance with zoning regulations. (Soto Defs.' Opp'n at 10-11; Hofgard Defs.' Opp'n at 3, 6-7). The SDA provides that Premium is "released from any liability for matters not appearing of public record at the time title examination is made." (SDA at 1). In response, Plaintiffs argue that this provision does not release the Soto Defendants from liability because some information regarding the Property's lack of permits and nonconformance with zoning regulations were matters "appearing of public record" when the title examination was performed. (Reply at 3-4). It is clear, however, that determining whether this particular release language applied to the property deficiencies at issue in this case would require the court "to enter into the legal and factual thicket that comprises the merits of th[e] case," which "is not terrain upon which a court uncertain of its jurisdiction should

tread." *Brown*, 26 F. Supp. 2d at 77.  Accordingly, construing factual ambiguities in Plaintiffs' favor, the court finds that the Superior Court could conceivably conclude that the SDA did not release the Soto Defendants from liability for their failure to disclose such matters.

The SDA also purports to release Premium from

> liability for notices of and/or actual violations of governmental orders or requirements, if any, issued by any departments, offices, or other authority of local, county, State or Federal government as to ownership, occupancy, zoning health department and/or laws, regulations and/or ordinances.

(SDA at 1).  But again, assessing the enforceability and precise application of this provision of the SDA, given all the various legal and factual considerations that entails, would force the court to delve into the merits of the case, which it should not and will not do here.  *See Brown*, 26 F. Supp. 2d at 77; *see*, *e.g.*, *B., Inc.*, 663 F.2d at 551 n. 14 ("where the removing party alleges that the named in-state defendant does not even exist; or that there is a contested question of fact regarding the true domicile of the parties the trial court may hold an evidentiary hearing to resolve these limited questions of jurisdictional fact," but "where the disputed factual issues relate to matters of substance rather than jurisdiction, e.g. did the tort occur? was there a privilege? was there a contract? etc., all doubts are to be resolved in favor of the plaintiff"); *Friedlander v. Figuerado*, No. 14-cv-4 (KKC), 2014 WL 1883793, at *4 (E.D. Ky. Apr. 30, 2014) ("Whether or not this purported waiver is enforceable is a factual dispute and cannot be part of the fraudulent joinder analysis."); *Sallee v. Ready*, No. 12-cv-116 (TCK) (PJC), 2012 WL 3061493, at *3 (N.D. Okla. July 26, 2012) ("Were this Court to engage in a full-blown evidentiary hearing to resolve the question of whether the parties reached an enforceable settlement agreement, the Court would be deciding whether Plaintiff has released her tort claim against Ready, which goes well beyond deciding disputed 'jurisdictional' facts.").  The court will therefore leave it to the Superior Court to construe the precise meaning of this provision of the

SDA in light of the settlement services the Soto Defendants agreed to provide, and to apply the SDA's release language to the Property's alleged lack of permits and nonconformance with zoning regulations.[4]

The Hofgard Defendants also argue that

> [r]egardless of whether or not the [Property] actually suffers from any defects in the title, and whether such defects could be attributable to a lack of diligence by the Soto Defendants, the fact remains that to the extent the Plaintiffs have a valid claim relating to the title services provided by the Soto Defendants, any such claim is properly made under the policy of insurance issued by Chicago Title, as the insurer, and not against the Soto Defendants, as Chicago's authorized agents.

(Hofgard Defs.' Opp'n at 9). Here again, however, the Hofgard Defendants venture into merits territory, making an argument that goes beyond what this court may consider in its fraudulent joinder analysis. *See*, *e.g.*, *Saddy Family, LLC v. Wade Loud & Lamarche, Assocs. Inc.*, No. 13-cv-7051 (JAP), 2014 WL 2931204, at *3 (D.N.J. June 30, 2014) ("Defendants' arguments turn on questions – e.g., whether and to what extent Quaker acted as an agent for another party, and the nature of that agency relationship – that bear too closely on a merits determination, which is not appropriate as part of the fraudulent joinder analysis.").

In sum, viewing the facts and the applicable state law in the light most favorable to Plaintiffs, construing the CPPA liberally, and construing its own removal jurisdiction strictly, the court finds that it would not be impossible for Plaintiffs to prevail against the Soto Defendants in Superior Court on their CPPA claim, notwithstanding all of the arguments raised by Defendants. The court therefore holds that Defendants have not satisfied the heavy burden of proof required

---

[4] This same logic applies to the purported "exception" in the title insurance policy that the Soto Defendants issued to Plaintiffs "for matters which would be disclosed by a complete land survey." (Soto Decl. ¶ 7). Even if the parties provided the court with a copy of the policy (which they did not), it is not this court's place to delve into non-jurisdictional merits questions regarding whether any such exception applies to the omissions alleged here.

to establish fraudulent joinder, and grants Plaintiffs' Motion to remand this case to D.C. Superior Court.

      b.   <u>Recovery of Costs and Expenses, Including Attorneys' Fees</u>

When a plaintiff prevails on a motion to remand, a court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Generally, an award of costs and expenses, including attorneys' fees, "is appropriate only when the non-removability of the action is obvious." *Yazdani v. Access ATM*, 457 F. Supp. 2d 36, 37 (D.D.C. 2006) (quotation omitted); *see also Ballard,* 813 F. Supp. 2d at 39 ("Absent unusual circumstances, a district court may award attorney's fees when remanding a removed case only if the removing party lacked an objectively reasonable basis for seeking removal.") (quotation omitted). "Reasonableness is evaluated 'at the time of removal, irrespective of the fact that it might ultimately be determined that removal was improper.'" *Jones v. District of Columbia*, 105 F. Supp. 3d 12, 13-14 (D.D.C. 2015) (quoting *Valdes v. Wal–Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)). Ultimately, however, the imposition of costs and expenses is at the court's discretion. *See Johnson-Brown*, 257 F. Supp. 2d at 181.

The court finds that the non-removability of this case was not so obvious as to warrant an award of costs and expenses. In so finding, the court notes the novelty of some of the legal issues raised, particularly the question of whether a reasonable consumer would consider the provision of settlement services and title insurance relating to the purchase of a property to encompass ensuring that the property had obtained the necessary permits and/or conforms to applicable zoning regulations. Accordingly, the court will exercise its discretion to deny Plaintiffs' request for attorneys' fees or any other costs or expenses.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion is hereby **GRANTED IN PART and DENIED IN PART**, and the case is remanded to the Superior Court of the District of Columbia.

An appropriate Order accompanies this Memorandum Opinion.

Date:  March 28, 2016

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge